# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CENDY L. MARTIN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Case No. CIV-05-313-FHS-SPS** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of the Social Security** ) | |
| **Administration,** ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant, Cendy L. Martin, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits under the Social Security Act. She appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred, because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy . . ." *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  The court may not reweigh the evidence nor substitute its discretion for that of the agency.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step two requires that claimant establish she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities.  *See id*. § 404.1521.  If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity (RFC) to perform her past relevant work.  If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account her age, education, work experience, and RFC–can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

The claimant was born on April 2, 1965, and was 38 years old at the time of the hearing before the ALJ. She has a high school education with special education classes and previously worked as a cashier, waitress, pizza baker, and maid. She has been unable to work since October 1, 1999, because of migraine headaches, vision problems, neck pain, muscle spasms, arthritis with swelling and knots in her joints, torn muscles in her left rib, shortness of breath, heart problems, hip problems, urinary incontinence, medication side effects, sleep problems, fatigue, dizziness, blackouts, nausea, memory problems, speech problems, hallucinations, problems with shaking and crying, and panic attacks. The claimant maintained insured status through June 30, 2001.

**Procedural History**

The claimant filed previous applications for benefits in April 1987 and again in March 1990. The first applications were denied initially and the claimant did not request reconsideration, and the second applications were denied initially and on reconsideration and the claimant did not request a hearing. On March 4, 2003, the claimant protectively filed an application for disability benefits under Title II (42 U.S.C.§ 401 *et seq*.). The application was denied in its entirety initially and on reconsideration. A hearing was held before ALJ Larry Weber on November 5, 2003, in Hugo, Oklahoma. By decision dated June 18, 2004, the ALJ found the claimant was not disabled at any time through the date of the decision. On June 8, 2005, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential process. He determined that the claimant's residual functional capacity ("RFC") allowed her to lift and/or carry ten pounds occasionally and five pounds frequently; stand and/or walk for two hours in an eight-hour workday; and sit for six hours in an eight-hour workday. He further determined the claimant had panic disorder and that she could not perform complex or detailed work but could perform work that was unskilled in nature and did not involve social interaction with the general public or co-workers (Tr. 25). The ALJ concluded that the claimant was not disabled, as there was work in the regional and national economies she could perform, *e.g.*, final assembler (Tr. 26).

## Review

The only contention raised by the claimant is that the hypothetical question posed to the vocational expert ("VE") did not relate all of the claimant's impairments with precision; therefore, the ALJ's step five determination that the claimant could perform work as a final assembler was not based on substantial evidence. Specifically, the claimant contends that the ALJ's RFC determination included a limitation for unskilled work that did not involve social interaction with the general public or co-workers, but the hypothetical question presented to the VE at the hearing did not include a limitation for no social interaction with co-workers. As is discussed below, the undersigned Magistrate Judge finds that the case must be reversed and remanded for clarification of the claimant's RFC by the ALJ.

The record reveals that the claimant had anxiety-related problems and suffered from panic attacks related to events that happened to her as a child and from losing her own child at the age of six weeks. In July 2003 her therapist Kelly Bradford, M.S., M.H.P., of Southern Oklahoma Psychological Services noted that the claimant was suffering from major

-4-

depression supported by symptoms of crying daily, feeling out of control, angry outbursts, difficulty sleeping, panic attacks, and post-traumatic stress disorder ("PTSD"). Ms. Bradford noted the claimant's panic attacks were sometimes triggered just by her leaving home (Tr. 171). Progress notes show the claimant received treatment from Don L. Rippee, D.O., for her anxiety, depression, and panic attacks beginning in June 2003 and ending in October 2003 and was prescribed various medications for these conditions including Prozac, Xanax, Zoloft, and Klonopin (Tr. 174-79).

In January 2004 the claimant underwent a psychological evaluation with Randy Crittenden, Ph.D., at the request of the ALJ. In describing her mental health problems to Dr. Crittenden, the claimant indicated she had experienced a "mental breakdown" because she was continually emotional, thought about suicide several times daily, suffered from low self-esteem, and had a temper. In relation to her temper, she indicated she argued with her kids and husband and that her emotional problems affected her ability to work because she could not handle stress and could not "deal with anybody." When asked directly about her relationship with supervisors and co-workers, she described relating to co-workers as "[s]ome okay and some just did not like it." Generally, she described her relationship with people in general as "[n]ot too good anymore since had my breakdown and just don't deal with people too much." Although Dr. Crittenden noted the claimant appeared to be at risk for unconscious magnification of symptoms because of her personality as well as some possible conscious malingering, he diagnosed her with pain disorder with both psychological factors and a general medical condition, chronic, moderate in partial remission with treatment; adjustment disorder with mixed anxiety and depressed mood, moderate type; PTSD, chronic, moderate, in partial remission with treatment; psychotic disorder NOS; personality disorder NOS (borderline traits with a paranoid flavor), mild type; and borderline

intellectual functioning (Tr. 229-35). Dr. Crittenden also completed a medical source statement of ability to do work-related activities (mental), noting the claimant had no restrictions with regard to interacting appropriately with the public, supervisors, or co-workers and slight limitations for responding appropriately to work pressures and to changes in the work setting (Tr. 238-39).

The ALJ need only include those impairments that are borne out by the evidentiary record in the RFC. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). A hypothetical to a VE is sufficient if it contains all of the limitations found to exist by the ALJ. *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000); *see also Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). The ALJ is not bound by the VE's response to a hypothetical, if it contained impairments the ALJ did not accept as true. *See Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). However, "'[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'" *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991), *quoting Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990).

At the hearing, the ALJ discussed the lack of evidence of a mental impairment and his intention to send the claimant for a psychological evaluation with Dr. Crittenden (Tr. 278, 280). In the meantime, he presented the VE with a hypothetical question that included only a limitation for contact with the general public. Based on this limitation, the VE testified the claimant could perform the job of final assembler (Tr. 288, 292). But in the decision, the ALJ included a limitation in the RFC that the claimant could not engage in work that involved social interaction with the general public or co-workers (Tr. 25).[2]

---

[2] The findings from the claimant's psychological evaluation with Dr. Crittenden in January 2004 do not clarify the ALJ's findings. In fact, the findings made by Dr. Crittenden in his written

The Commissioner contends that the ALJ simply mis-stated the limitation in the RFC and points to the findings section of the decision, where the ALJ noted only a limitation on the claimant's ability to perform work with the general public. This is, of course, consistent with the hypothetical question posed to the VE, but the ALJ could not have included the limitation in the hypothetical to the VE, because the claimant's psychological evaluation came *after* the hearing. In any event, the Court may not speculate on what the ALJ intended. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The ALJ's decision should have been evaluated based solely on the reasons stated in the decision."), *citing Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962). Because it is unclear from the ALJ's decision what RFC he intended as the claimant's and whether he related "with precision" to the VE all of the claimant's limitations pursuant to *Hargis*, the decision of the Commissioner must be reversed. On remand, the ALJ should make clear whether the RFC includes a limitation that the claimant cannot perform work requiring social interaction with co-workers, and if so, pose appropriate hypothetical questions to a VE and determine what work, if any, the claimant can perform.

## Conclusion

The undersigned Magistrate Judge finds that incorrect legal standards were applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the

---

report and on the mental RFC assessment appear to be in conflict with one another. In his report he noted comments from the claimant that she could not handle stress or "deal with anybody" and described her relationship with co-workers as "[s]ome okay and some just did not like it." She generally described her relationship with people as "not good anymore since had my breakdown and just don't deal with people too much." (Tr. 229-35). On the claimant's mental RFC assessment, however, Dr. Crittenden found the claimant had no restrictions in interacting appropriately with the public, supervisors, or co-workers and only had slight limitations for responding appropriately to work pressures and to changes in the work setting (Tr. 238-39).

Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Parties are herewith given ten (10) days from the date of this service to file with the Court Clerk any objections with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

**DATED** this 3rd day of October, 2006.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**